# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DEBRA L. ASSENAT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:15-CV-596 |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Debra L. Assenat ("Assenat") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Assenat alleges that the ALJ erred by failing to give the opinion of her treating physician proper weight and failing to properly consider her pain and credibility. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Assenat's Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Assenat failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Assenat filed for SSI and DIB on November 6, 2013, claiming that her disability began on September 30, 2010. R. 17. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 81–134. On May 20, 2015, ALJ David Lewandowski held a hearing to consider Assenat's disability claim. R. 36–80. Assenat was represented by an attorney at the hearing, which included testimony from Assenat and vocational expert Barry Hensley. Id.

On July 25, 2015, the ALJ entered his decision analyzing Assenat's claim under the familiar five-step process,[2] and denying Assenat's claim for disability. R. 17–30. The ALJ found that Assenat suffered from the severe impairments of asthma, sacroiliac joint dysfunction, sacral fracture, bilateral total hip arthroplasty with revision on the left, migraine headaches; right ankle

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

fracture, and lumbar degenerative disc disease. R. 19. The ALJ further found that Assenat retained the RFC to perform a range of sedentary work with no postural activities aside from occasional stooping; that she should avoid industrial hazards and pulmonary irritants; that she requires the use of a cane for prolonged ambulation; and she will be absent from work for two consecutive days every three months. R. 22. The ALJ determined that Assenat is capable of returning to her past relevant work as a bank branch manager, and thus is not disabled. R. 30. Assenat requested that the Appeals Council review the ALJ's decision. On September 25, 2015, the Appeals Council denied Assenat's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

### Treating Physician

Assenat asserts that the ALJ erred by according little weight to the opinion of her treating physician, Wadid Zaky, M.D., that "she can't sustain a full time job and she needs frequent rest breaks through the day secondary to her sacroiliac arthropathy." R. 1725. I find that the ALJ properly explained the weight given to Dr. Zaky's opinion, which allows for meaningful review by the court and is supported by substantial evidence.

Assenat underwent a left hip replacement in 2006, a right hip replacement in 2007 and a left hip revision in March 2011. R. 373, 381–82, 772. Dr. Zaky began treating Assenat in March 2014 for chronic hip and leg pain. R. 1319. On March 10, 2014, Assenat reported that she had moderate improvement in her hip and leg pain from a recent sacroiliac joint ("SI") injection. Id. She had normal range of motion on physical exam. R. 1321. Dr. Zaky diagnosed Assenat with anxiety, asthma and left hip pain. Id. On June 5, 2014, Assenat reported improved hip pain with Lortab, taken as needed. R. 1328. Assenat visited Dr. Zaky in August 2014, complaining of low back pain that radiated as pain, numbness, tingling and weakness to her left leg, down to her

3

toes. She described the pain level as five on most days and up to eight on the worst days. R. 1339. She had tenderness to palpation of the lumbar paraspinal and lumbar sacroiliac region, but no swelling, negative straight leg raise testing, 5/5 strength, good lower extremity sensation, and good lumbar range of motion, with only mild increase in pain. R. 1341. Dr. Zaky continued Assenat on Neurontin and recommended physical therapy and a piriformis injection for pain relief. R. 1347.

On September 26, 2014, Dr. Zaky administered a piriformis injection to Assenat. R. 1365. On November 6, 2014, Assenat reported that the piriformis injection "really helped her pain." R. 1438. She had tenderness to palpation of the lumbosacral region and genu valgum, commonly called "knock-knee," bilaterally with ambulation. Otherwise, Assenat had no swelling, negative straight leg raise testing and good lumbar range of motion with mild increase in pain. R. 1441–42. On February 2, 2015, Assenat reported 90% pain relief from the piriformis injection that lasted four months, and Dr. Zaky administered another piriformis injection two days later. R. 1452–54, 1456–57.

Assenat fractured her right ankle in March 2015, which was placed in a pneumatic boot. R. 1687. Assenat began bearing weight on the boot in late March (R. 1687); however, in April, Assenat complained that walking with the boot threw her off balance and increased her pain. R. 1701. She also reported tenderness in the lumbar and sacroiliac region but good lumbar range of motion with only mild pain. R. 1706.

On April 29, 2015, Dr. Zaky administered SI and left greater trochanter injections, which Assenat reported provided 60–70 percent pain relief for one week, and 40 percent pain relief the following week. R. 1730–31. On May 21, 2015, Assenat reported that her pain was back to a normal level of five out of ten. R. 1724. On exam, Dr. Zaky noted that Assenat was in no acute

4

distress and "[o]verall no new changes to the exam." Id. He further noted that due to the short duration of relief from the SI injection, Assenat might benefit from an ablation procedure. R. 1725. Dr. Zaky also stated, "[s]he is filing for disability, will refer for functional assessment. I think she can't sustain a full time job and she needs frequent rest breaks through the day secondary to her sacroiliac arthropathy." R. 1725. Assenat argues that this opinion is entitled to great weight by the ALJ.

When developing Assenat's RFC, the ALJ reviewed Dr. Zaky's treatment notes and his May 21, 2015 statement, and gave his conclusion little weight, stating:

> Dr. Zaky is an acceptable medical source within the meaning of the regulations, and he has a treating relationship with the claimant. However, he did not provide a function-by-function assessment of her abilities, as he noted that he would refer her for a functional assessment. His statement that she cannot sustain full time employment is a conclusion on an issue reserved to the Commissioner, and he did not define frequent rest breaks. Moreover, it appears that his conclusion may be based upon a recent acute incident, which is temporary in nature, and based on the claimant's subjective complaints.

R. 27.

The ALJ also reviewed the opinion of Philip Justin Patterson, M.D., who wrote in a February 2013 office note that Assenat "will continue with hip precautions of no leg crossing or bending past 90 degrees." R. 847. The ALJ gave the statement little weight, noting that Dr. Patterson is an acceptable medical source and treating physician, but that he did not provide a function-by-function assessment of Assenat's abilities; and further, that the postural limitations set forth in the RFC, in conjunction with a limitation of sedentary work, adequately encompassed the limitations resulting from Assenat's hip impairment and related impairments. R. 28.

The ALJ also considered the opinions of state agency physicians R.S. Kadian, M.D. and Jack Hutcheson, M.D., who determined that Assenat could perform a range of light work, including lifting and carrying 20 pounds occasionally and 10 pounds frequently, and sitting and

5

standing each for six hours in an eight hour day. R. 90, 118. The ALJ gave the opinions of Drs. Kadian and Hutcheson limited weight, finding that Assenat's subjective complaints indicate greater limitations, particularly an inability to stand and walk for six hours per day due to her well-documented sacroiliac joint dysfunction, hip problems, and degenerative disc disease of the lumbar spine. R. 27.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe v. Colvin, 826 F.3d 176, 190–91 (4th

6

Cir. 2016). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. See Monroe, 826 F.3d at 189–91. The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case to that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2016)).

Here, the ALJ provided a detailed explanation of the weight given to Dr. Zaky's opinion, which allows for meaningful review and is supported by substantial evidence. As the ALJ noted, Dr. Zaky did not complete a function-by-function assessment of Assenat's abilities, but instead stated that he would refer her for such an assessment. Thus, Dr. Zaky's treatment note reflects

7

on its face that he is not providing an opinion as to Assenat's specific functional capabilities. Further, as the ALJ noted, Dr. Zaky's conclusion that Assenat would need "frequent rest breaks through the day," is vague, and the determination of whether Assenat is capable of full time employment is an issue reserved to the Commissioner. See Sharp v. Colvin, No. 15-1578, 2016 WL 6677633, at *4 (4th Cir. Nov. 14, 2016) ("Ultimately, the ALJ is not bound by a treating physician's opinion that a claimant is disabled or unable to work, because that determination is reserved for the ALJ.") Finally, the ALJ correctly noted that Assenat fractured her ankle two months before her appointment with Dr. Zaky, and thus, it is likely that some of her limitations at the time of his examination were temporary.

Assenat argues that "it is clear what Dr. Zaky means by frequent rest breaks, as he stated that due to the frequent breaks, plaintiff is unable to maintain full time work." Pl. Br. Summ. J. 31. She also asserts that Dr. Zaky's opinions are supported by the objective and clinical evidence of record, and that his opinions are not based on "a recent acute incident." Pl. Br. Summ. J. p. 32. Assenat's arguments do not illustrate an error in the ALJ's analysis, but rather simply disagree with the ALJ's conclusions. "[W]e may not reweigh this evidence, and we must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether [the claimant] was disabled." Sharp v. Colvin, 2016 WL 6677633, at *5.

Overall, the ALJ's assessment of the medical opinions in the record allows the court to meaningfully review the weight given to each opinion and the ALJ's ultimate conclusions. The ALJ gave specific weight to each opinion contained in the record and provided additional explanation as to how that weight was assessed. The ALJ's explanation of the degree of weight he gave the conflicting medical opinions includes the required "narrative discussion describing

8

how the evidence supports each conclusion ...." Mascio, 780 F.3d at 636.; see also Sharp, 2016 WL 6677633, at *5 (finding the ALJ's explanation that "the claimant's reported limitations were not supported by [the treating physician's] office notes" was sufficient to allow meaningful review as required by Mascio because the ALJ relied on and identified a particular category of evidence.) Thus, the ALJ sufficiently explained his reasons for giving little weight to the opinion of Dr. Zaky, and such reasons are supported by substantial evidence in the record.

### Evaluation of Pain and Credibility

Assenat also asserts that the medical evidence corroborates her statements regarding her pain and functional limitations, and the ALJ incorrectly discounted her credibility. Assenat argues that the ALJ incorrectly represented the efficacy of injections in reducing her pain, and failed to properly consider her pain and her testimony that she is unable to sit long enough to perform sedentary work and must lie down during the day. Assenat relies upon Dr. Zaky's opinion provided in his office note dated May 21, 2015. Pl. Br. Summ. J. p. 34. Assenat also alleges that it is unclear which of her statements about her pain and limitations the ALJ credited and which he discredited to arrive at the RFC. Pl. Br. Summ. J. p. 35.

Assenat's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis,[3] the ALJ must examine all of the evidence, including the

---

[3] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.
  Here, SSR 16–3p was issued long after the ALJ's consideration of Assenat's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

9

objective medical record, and determine whether Assenat met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Assenat's ability to work. Id. at 594–95.

Here, the ALJ followed the required two step process, and determined first that there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Assenat's symptoms, such as pain. R. 26–27. See SSR 96–7p, at *2. The ALJ set forth Assenat's subjective complaints about the intensity, persistence and limiting effects of her symptoms in detail in her opinion. R. 22–23. Specifically, Assenat reported that she has pain in her left hip that radiates at times down her left leg to her pinky toe; she has problems with an unsteady gait; she has pain in the left side of her neck; and her left arm gets numb and weak. R. 23. Assenat asserted that she can stand for 5–10 minutes and sit for maybe 30 minutes; she lies down three times per day; she has a difficult time using stairs and balancing, and she is unable to kneel or crouch. Id.

The ALJ then concluded that Assenat's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. R. 27. The ALJ determined that Assenat's statements about her symptoms and limitations are not consistent with the objective medical evidence and other evidence in the record. Id. Specifically, the ALJ set forth Assenat's medical treatment history in detail (R. 23–26) and noted,

---

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Assenat's report of her own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

10

> [t]he record indicates that the claimant underwent total hip replacement procedures, on the left in 2006 and the right in 2007, with a revision of the left hip replacement in March 2011. She also fell in September 2013 and fractured her coccyx. She complained of pain in her left hip and lumbosacral region, and MRI results have shown mild degenerative changes in the lumbar spine. Physical examination findings generally show lumbosacral tenderness but good range of motion. She has received sacroiliac and piriformis injections about every 4 months for pain relief, and she has reported as much as 90% pain relief. She also takes prescribed narcotic medication for pain. Although she recently fractured her right ankle, this is not expected to provide long-term limitations that are greater than those enumerated in the residual functional capacity above. As she testified regarding unsteady gait and the record documents falls, she is limited to use of a cane for prolonged ambulation. As she testified that she experiences migraines about every 3 months, lasting for two days, the undersigned has included a corresponding absence limitation in the residual functional capacity above.

R. 27.

It is apparent that the ALJ reviewed the medical record regarding Assenat's impairments in detail and measured her statements about the severity of her symptoms and limitations against the objective medical evidence. Considering Assenat's treatment notes, together with the opinions of the state agency physicians, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Assenat's statements regarding the extent of her limitations. It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Sharp v. Colvin, 2016 WL 6677633, at *6 ("We may not reweigh this evidence, make credibility determinations, or supplant the ALJ's judgment with our own.") (internal citations omitted.) The ALJ's evaluation of Assenat's symptoms is supported by substantial evidence, and the court will not disturb it.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

11

defendant, **DENYING** Assenat's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter: February 6, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge