IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DEBRA L. ASSENAT, )
 )
    Plaintiff, )
 )
 ) Civil Action No. 7:15cv00596
v. )
 )
NANCY A. BERRYHILL,[1] ) By: Michael F. Urbanski
Acting Commissioner of Social Security, )     United States District Judge
 )
    Defendant. )

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 6, 2017, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Debra L. Assenat has filed objections to the report, the Commissioner has responded, and this matter is now ripe for the court's consideration.

### I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and will be substituted for Carolyn W. Colvin as defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the

2

court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

3

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.[2]

Assenat raised two principal arguments on summary judgment: 1) that the Administrative Law Judge (ALJ) failed to give greater weight to the opinion of her treating physician, Dr. Wadid Zaky, and 2) that the ALJ failed to properly evaluate her credibility and assess her complaints of pain. The magistrate judge rejected these arguments and found substantial evidence supports the ALJ's determination that Assenat is capable of performing her past relevant work as a bank branch manager. Assenat objects to the magistrate judge's findings as to each of her two arguments. The court will address these objections in turn.

## A.

Assenat first objects to the magistrate judge's conclusion that substantial evidence supports the ALJ's decision to give little weight to the opinion of Dr. Zaky, Assenat's pain management physician. The opinion at issue appears in a treatment note from May 21, 2015 and consists of two sentences: "[Assenat] is filing for disability, will refer for functional assessment. I think she can't sustain a full time job and she needs frequent rest breaks through the day secondary to her sacroiliac arthropathy." Administrative Record, hereinafter "R." at 1725. The remainder of this treatment note reflects Assenat's complaints of worsening SI and piriformis pain that generally runs at a level 5. Assenat reported receiving

---

[2] Detailed facts about Assenat's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 20) and in the voluminous administrative transcript (ECF No. 9). As such, they will not be repeated here.

4

60-70% pain relief from her injections for about a week, a 40% reduction in pain the following week, and then her pain returned to its initial level. R. 1724. No new overall changes were noted from previous examinations. R. 1724. Dr. Zaky stated that due to the short duration of relief Assenat receives from injections she might benefit from an ablation procedure, and he referred her to UVA and scheduled another injection in the meantime. R. 1725.

> As regards Dr. Zaky's opinion, the ALJ stated:
>
>> The undersigned has considered the opinion of Wadid Zaky, M.D., but accorded it little weight. Dr. Zaky wrote, "I think she can't sustain a full time job and she needs frequent rest breaks through the day secondary to her sacroiliac arthropathy." (Ex. 22F at 4.) Dr. Zaky is an acceptable medical source within the meaning of the regulations, and he has a treating relationship with the claimant. However, he did not provide a function-by-function assessment of her abilities, as he noted that he would refer her for a functional assessment. His statement that she cannot sustain full time employment is a conclusion on an issue reserved to the Commissioner, and he did not define frequent rest breaks. Moreover, it appears that his conclusion may be based upon a recent acute incident, which is temporary in nature, and based on the claimant's subjective complaints.
>
> R. 27. On summary judgment, plaintiff argued:
>
>> The reasons cited by the ALJ in according little weight to Dr. Zaky's opinions are not supported by substantial evidence. It is clear what Dr. Zaky means by frequent rest breaks as he stated that due to the frequent breaks, plaintiff is unable to maintain full time work. (R. 1725). It is clear from Dr. Zaky's statements and opinions that he opined due to her sacroiliac joint pain and chronic back pain[,] plaintiff is incapable of maintaining work for eight hours per day due to the need to take frequent rest breaks throughout the day. (R. 1724-25). Furthermore, Dr. Zaky's opinions are supported by the objective and clinical evidence o[f] record and consistent with the other substantial evidence of record. In addition, it is also clear from the medical evidence of record that Dr. Zaky's opinions are not based on a

5

> recent acute incident as found by the ALJ. Dr. Zaky's opinions clearly reference plaintiff's chronic impairments and he specifically references her sacroiliac arthropathy, which results in her low back pain. (R. 1725).

Pl.'s Summ. J. Br., ECF No. 15, at 31-32.

Citing the recent Fourth Circuit case of <u>Monroe v. Colvin</u>, 826 F.3d 176, 190-91 (4th Cir. 2016), the magistrate judge held that "the ALJ provided a detailed explanation of the weight given to Dr. Zaky's opinion, which allows for meaningful review and is supported by substantial evidence." Report & Recommendation, ECF No. 20, at 7. The magistrate judge rejected the arguments raised by Assenat on summary judgment, as they "do not illustrate an error in the ALJ's analysis, but rather simply disagree with the ALJ's conclusions." <u>Id.</u> at 8. Finding the ALJ's assessment of the medical opinions of record and his explanation of the degree of weight he gave those opinions complies with social security regulations and is sufficient to allow for meaningful judicial review, the magistrate judge concluded that the ALJ's reasoning is supported by substantial evidence.

Assenat takes issue with both the ALJ's and the magistrate judge's reliance on her ankle fracture to discount Dr. Zaky's opinion, arguing Dr. Zaky "never referenced the ankle and instead, completely focused upon plaintiff's chronic back pain and sacroiliac arthropathy." Pl.'s Obj., ECF No. 21, at 2. To be sure, Dr. Zaky's May 21, 2015 treatment note, which contains his two-sentence opinion as to Assenat's ability to work, does not expressly reference her ankle fracture. However, as both the ALJ and magistrate judge recognize in their respective decisions, Assenat fractured her ankle in March 2015, two months prior to Dr. Zaky's May treatment note. One month after Assenat's ankle injury, in April, she began complaining that the pneumatic boot she was wearing had thrown her off

6

balance, increasing her pain in the lumbar and SI region. Report & Recommendation, ECF No. 20, at 4; R. 26. A treatment note from Assenat's April 10, 2015 appointment with Jennifer Richardson, PA-C, at Roanoke Physiatry states:

> She has seen Dr. Zaky and had piriformis injection, SI joint injection and trochanteric bursa injection. Was feeling so much better but she recently rolled her ankle over and fell fracturing her ankle. Was unable to bear any weight for 2 weeks and then was able to walk in a boot. This has really thrown her off balance and flared her pain. No new numbness, tingling or weakness. No bowel or bladder incontinence. Getting norco from orthopedics currently because of the ankle injury. We had weaned her off the norco and she says that she did better without it than she thought but still feels she needs it sometimes. Continues to blame the elevated ETG on her class reunion. Wants to get set up for more injections as soon as she can.

R. 1704. Thus, Assenat reported feeling "so much better" until she injured her ankle and was forced to walk in a boot that upset her balance and flared her SI and hip pain. Indeed, Dr. Zaky's treatment record from February 2015—before the ankle injury—states: "Since the last visit, patient is stating that her pain has been getting better with 90% pain relief from Left piriformis muscle injection utilizing fluoroscopy, pain is starting to gradually return [and she is currently] 'receiving about 40% pain relief'" and having pain with her sacroiliac. R. 1452. Dr. Zaky noted his plan to repeat the injection at Assenat's request, as she had received "about 90% relief" from the previous injection that "lasted for 4 month[s]." R. 1453.

It is reasonable, then, for the ALJ and the magistrate judge to remark that Dr. Zaky's May 2015 opinion that Assenat "can't sustain a full time job" and "needs frequent rest breaks through the day secondary to her sacroiliac arthropathy" comes on the heels of an

7

ankle injury that flared her pain. Assenat cannot ignore the temporal proximity of this reported flare up to Dr. Zaky's disability opinion.

In any event, Assenat's recent ankle injury was not the only thing the ALJ considered in according Dr. Zaky's opinion little weight. The ALJ determined that Dr. Zaky's opinion was based on Assenat's subjective complaints, that his opinion that Assenat "can't sustain a full time job" is a conclusion on an issue reserved to the Commissioner, and that his opinion that she "needs frequent rest breaks" is vague and undefined. R. 27. The ALJ also noted the lack of a function-by-function of Assenat's abilities in the record. Id.

Assenat argues in her objections that the factors set forth in 20 C.F.R. § 416.927(c)(2)-(5) do not require a treating physician to provide a function-by-function assessment. Pl.'s Obj., ECF No. 21, at 2-3. However, § 416.927 expressly provides that a statement by a medical source that a claimant is "unable to work" is not a medical opinion as described in § 416.927(a)(2), but rather an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of the case. 20 C.F.R. § 416.927(d)(1). In contrast, medical opinions as defined in § 416.927(a)(2) are "statements from physicians . . . and other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his/her] symptoms, diagnosis and prognosis, what [he/she] can still do despite impairment(s), and [his/her] physical or mental restrictions."

In his May 2015 treatment note, Dr. Zaky indicated he would refer Assenat elsewhere for a functional assessment, but no functional capacity assessment appears in the record, except for as determined by the reviewing state agency physicians. Dr. Zaky's "opinion"

8

therefore consists of two statements—(1) that Assenat "can't sustain a full time job," which is a conclusion on an issue reserved to the Commissioner, 20 C.F.R. § 416.927(d)(1), and (2) that Assenat needs frequent rest breaks through the day secondary to her sacroiliac arthropathy. The court agrees with the conclusions of both the ALJ and the magistrate judge that this latter statement is vague and not supported by substantial evidence in the record, and the ALJ did not err by giving Dr. Zaky's opinion little weight. See 20 C.F.R. § 416.927(c), (d). Indeed, Dr. Zaky appears to be basing his opinion that Assenat needs frequent rest breaks on her subjective complaints rather than his objective findings.

Treatment notes also reveal that Assenat presented to Dr. Zaky at the Carilion Chronic Pain Management Clinic on August 14, 2014 with complaints of left hip pain and lower back pain. Assenat stated that her pain started 7 months prior from no known injury or fall, with a gradual onset and symptoms growing increasingly worse. R. 1339. She described her pain as 5 out of 10 most days that radiates to the outer side of the left lower extremity down to her toes. R. 1339. Dr. Zaky noted that Assenat is "moderately active" and that she reported some improvement in pain symptoms with medication and aqua therapy. R. 1340. Examination revealed tenderness on lumbar spine/paraspinal muscle palpation, no limitations in her lumbar spine range of motion, positive left lumbar facet loading test, negative bilateral straight leg raising test, positive left Patrick/FABER test, and positive bilateral PSIS deep palpation tenderness. R. 1344. Her motor strength was noted to be 5/5 in all muscle groups, bilaterally; she had intact sensation to the touch and vibration in all 4 extremities; and her patellar and ankle reflexes were both 2+ bilaterally. R. 1344. Dr. Zaky reviewed the findings from a 2011 MRI, which showed mild disc degeneration at all lumbar

9

levels; no significant focal disc abnormalities, central canal stenosis or foraminal narrowing; mild bilateral L4-L5 and L5-S1 facet joint arthropathy; no acute fractures or dislocations; and normal bone marrow signal. R. 1347. He ordered a new MRI of the lumbar spine. R. 1344-47. Dr. Zaky determined Assenat was "most likely experiencing neuropathic pain running along the sensory distribution of L5 nerve root(s) on the left. MRI from 2011 with no evidence of nerve root compression. Will obtain new MRI." R. 1347. He opined that her pain is less likely sacroiliac and that she would benefit from pyriformis injections, Neurontin, and physical therapy "to improve lumbar spine ROM with more muscle pain relief." R. 1347.

An MRI was performed on September 3, 2014 and compared to the 2011 study. The new MRI showed mild concentric disc bulges at L4-L5 and L5-S1, superimposed central disc protrusion at L5-S1, and mild right foraminal stenosis at L5-S1. R. 361. Dr. Zaky performed a successful piriformis injection under fluoroscopy on September 26, 2014. R. 1365. At a follow-up appointment on November 6, 2014 with Roanoke Physiatry for her back and hip pain, Assenat reported the piriformis injection "really helped her pain." R. 1438. Assenat was tender to palpation in the left SI region, but had 5/5 muscle strength and good range of motion in the lumbar spine with only mild increase in pain. R. 1441-42.

Assenat presented to Dr. Zaky again on February 2, 2015 for a follow-up appointment. As noted supra, at this visit she reported 90% pain relief from her piriformis injection over four months but complained that her pain had started to return. R. 1452. Dr. Zaky noted "[o]verall no new changes to the exam," and diagnosed her with piriformis muscle pain and sacroilitis, not elsewhere classified. R. 1453. Dr. Zaky performed another

piriformis injection on February 3, 2015. R. 1456. At a follow-up appointment with Roanoke Physiatry on April 10, 2015, Assenat again reported that she "did well with [this] last procedure with Dr. Zaky" but stated that her pain had flared after a recent ankle injury. R. 1707. Likewise, treatment notes from Dr. Zaky dated April 29, 2015 state Assenat had obtained "good relief" from recent injections "until recent fall and ankle fracture." R. 1729. Dr. Zaky performed a left sacroiliac joint injection and left greater trochanteric bursa injection. R. 1730. At her follow-up appointment with Dr. Zaky on May 21, 2015, Assenat reported that she received 60-70% pain relief from her recent injection for about a week, a 40% reduction the following week, and her pain had returned back to the same level. R. 1724. There were no new changes to the examination, and Dr. Zaky diagnosed Assenat with sacroiliac joint pain and lumbago. R. 1724-25. Dr. Zaky noted that due to the short duration of her relief, she might benefit from an ablation procedure, and stated he would refer her to UVA and repeat an SI injection in the meantime. R. 1725.

In sum, there is little in the way of explanation in Dr. Zaky's records for his terse opinion of May 21, 2015 that Assenat needs frequent rest breaks secondary to her sacroiliac arthropathy. Nor is the meaning of "frequent rest breaks" even clear. The ALJ's decision to give Dr. Zaky's opinion little weight is supported by substantial evidence in the record. The court finds no error in the magistrate judge's analysis of this issue.

**B.**

In her second objection, Assenat argues the magistrate judge erroneously concludes the ALJ's evaluation of her statements regarding the severity of her symptoms and limitations is supported by substantial evidence. Assenat reiterates her argument raised on

11

summary judgment that the ALJ is required to explain which of plaintiff's allegations about her pain and limitations he credited and which he did not, and she contends the ALJ failed to properly do so, citing Mascio v. Colvin, 780 F.3d 632, 639-40 (4th Cir. 2015). Compare Pl.'s Obj., ECF No. 21, at 3-4 with Pl.'s Summ. J. Br., ECF No. 15, at 35. Assenat contends the magistrate judge "ignores the fact" that the ALJ is required to provide such an explanation. Pl.'s Obj., ECF No. 21, at 3. The magistrate judge plainly did not ignore Assenat's argument. See Report & Recommendation, ECF No. 20, at 9. Rather, he concluded the ALJ properly assessed Assenat's credibility under the required two-step process and adequately explained his findings, and that substantial evidence in the record supports the ALJ's conclusion that the objective medical evidence undermines Assenat's statements regarding the extent of her limitations. Id. at 9-11. Assenat appears to simply disagree with the magistrate judge's conclusion in this regard. A plaintiff, unsatisfied by the findings and recommendation of the magistrate judge, cannot seek re-argument of his case in the guise of objecting. Veney, 539 F. Supp. 2d at 844.

To the extent Assenat is suggesting that the Fourth Circuit's decision in Mascio requires an ALJ to specifically analyze each of plaintiff's statements in order to identify which were found credible, the court cannot agree. In Mascio, the Fourth Circuit found that the ALJ "[got] things backwards" by including boilerplate language that implied he determined the claimant's residual functional capacity first and then used that RFC to assess her credibility. 780 F.3d at 639. The court held the ALJ "should have compared [the claimant's] alleged functional limitations from pain to the other evidence in the record, not to [her] residual functional capacity," id., which is exactly what the ALJ did in the instant

12

case. As the magistrate judge correctly held, the ALJ set forth Assenat's subjective complaints in detail in his opinion, R. 22-23, and then compared those complaints to the voluminous medical evidence, see R. 23-26, before concluding that Assenat's subjective symptoms were not entirely credible, R. 27. See Report & Recommendation, ECF No. 20, at 9-11.

The court in Mascio further held that the ALJ's error was not harmless because he did not properly analyze her credibility elsewhere in his opinion and, instead, rejected her complaints of pain because she (1) had not complied with follow-up mental health treatment, (2) had lied to her doctor about using marijuana, and (3) had been convicted for selling her prescription pain medication. 780 F.3d at 639. The Fourth Circuit noted that the first reason has nothing to do with pain, and as to the second and third reasons, the ALJ concluded only that they made Mascio's statements as to her limiting pain less credible. Id. The court faulted the ALJ for choosing to credit some but not all of Mascio's subjective statements, holding "[n]owhere . . . does the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity." Id. at 640. This lack of explanation required remand. Id.

The same cannot be said here, where the ALJ explained which of Assenat's subjective complaints were consistent with the objective medical evidence of record and incorporated those limitations into his RFC assessment. R. 27. Contrary to plaintiff's suggestion on brief, Mascio does not require the ALJ to analyze a claimant's subjective complaints statement-by-

13

statement and expressly note which he found credible and which he did not. See Birchfield v. Colvin, No. , 2016 WL 3566740, at *2 (W.D.N.C. June 30, 2016) ("Notably, Mascio did not require that the ALJ specifically analyze each of Plaintiff's statements in order to identify which were found credible, but required that where an ALJ uses boilerplate that 'gets things backwards,' the decision must indicate the reason for the weight attributed to Plaintiff's statements."). As the magistrate judge determined, the ALJ conducted a proper, two-step credibility analysis pursuant to Social Security Ruling 96-7p. Because he looked to other factors besides his RFC calculation in determining the credibility of Assenat's statements, the court finds no error under Mascio.

Assenat further objects to the magistrate judge's conclusion that substantial evidence supports the ALJ's credibility determination. This argument appears to pertain to the following statement in the magistrate judge's report: "Considering Assenat's treatment notes, together with the opinions of the state agency physicians, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Assenat's statements regarding the extent of her limitations." Report & Recommendation, ECF No. 20, at 11. Assenat argues it was error for the magistrate judge to point to the state agency physician's opinions as substantial evidence, because the ALJ rejected those opinions, "and, as outlined in plaintiff's brief, the objective evidence of record actually supports plaintiff's allegations." Pl.'s Obj., ECF No. 21, at 4. This argument is nothing more than a general objection to the magistrate judge's conclusion and, as such, does not require de novo review by the court. See Veney v. Astrue, 539 F. Supp. 2d at 844-45. In any event, the ALJ did not reject the state agency physicians' opinions but rather accorded them limited weight,

14

explaining that "the claimant's subjective complaints indicate greater limitations" than were found by the reviewing state agency physicians. R. 27. The ALJ properly took into account Assenat's subjective complaints of pain and limitations in restricting her to a limited range of sedentary work. The court finds no error in the magistrate judge's conclusion that the ALJ's credibility assessment was proper and supported by substantial evidence. As the magistrate judge noted, it is the ALJ's role to resolve inconsistencies between a claimant's alleged impairments and his ability to work, not the court's. Rather, the court's role on judicial review is to determine whether there is substantial evidence to support the factual findings of the ALJ and whether they were reached through the correct legal standard. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the court "is not whether [Assenat] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Id. (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). In making that determination, the court must not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary" or his designee, the ALJ. Id. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).

15

## III.

At the end of the day, it is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The court has reviewed the magistrate judge's report, the objections to the report, the Commissioner's response, and the administrative record and, in so doing, made a de novo determination of the portion of the report to which Assenat properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: 03-24-2017

/s/ Michael F. Urbanski
Michael F. Urbanski
United States District Judge